**CINCINNATI MILLING MACH. CO. v. UNITED STATES.**

No. 42872.

Court of Claims.

May 4, 1936.

This case having been heard by the Court of Claims, the court, upon a stipulation of the facts and the evidence, makes the following special findings of fact:

1. The Cincinnati Milling Machine Company, the plaintiff herein, is, and during all the time mentioned in its petition was, a corporation organized and existing under and by virtue of the laws of the state of Ohio, with its principal office and place of business in Cincinnati, state of Ohio.

2. In April, 1917, the plaintiff purchased the entire common capital stock of the Modern Foundry Company, a corporation, for which it paid a total of $167,738.-86.

3. On December 27, 1922, the plaintiff acquired all the outstanding preferred stock of the said Modern Foundry Company, for which it paid in cash a total of $156,800.

4. For the years 1918 to 1927, inclusive, the plaintiff duly filed consolidated income tax returns for the plaintiff and the Modern Foundry Company with the Collector of Internal Revenue at Cincinnati, Ohio.

5. The income or loss of the plaintiff and the Modern Foundry Company, and

their consolidated income or loss for the years 1918 to 1927, inclusive, follows:

| | Consolidated | The C. M. M. Co. | Foundry |
|---|---|---|---|
| 1918.......... | $2,939,577.88 | $2,913,307.35 | $26,270.53 |
| 1919.......... | 1,156,366.44 | 1,231,205.57 | 74,839.13 |
| 1920.......... | 31,957.35 | 14,362.17 | 46,319.52 |
| 1921.......... | 496,798.45 | 371,442.23 | 125,356.22 |
| 1922.......... | 11,114.26 | 64,598.73 | 53,484.47 |
| 1923.......... | 506,441.64 | 511,502.37 | 5,060.73 |
| 1924.......... | 151,869.97 | 167,432.99 | 15,563.02 |
| 1925.......... | 163,542.88 | 179,919.00 | 16,376.12 |
| 1926.......... | 1 965,473.37 | 969,512.23 | 30,411.04 |
| 1927.......... | 1 515,876.30 | 320,222.02 | 14,327.41 |

1 This includes income of Cincinnati Grinders, Inc.

6. With the knowledge of the Commissioner of Internal Revenue, and pursuant to the procedure followed by the Bureau of Internal Revenue at the time, the plaintiff in arriving at the consolidated income for the years 1922 and 1923, as shown by its tax returns for said years, deducted from its income the losses of its subsidiary, the Modern Foundry Company, for the years 1921 and 1922 as well as the loss of the plaintiff for the year 1921.

7. Subsequently by decisions of the courts it has been determined that the losses of a subsidiary company could not be deducted from net income of the parent company in arriving at the consolidated net income for the year, or years, following the loss; and that the loss of a subsidiary company is deductible in the following year, or years, only from the income of the subsidiary company.

8. In December, 1927, the plaintiff paid the sum of $550,000 to the Modern Foundry Company for its entire property and assets, which property and assets were thereupon transferred to the plaintiff. Upon receipt of the $550,000, the Modern Foundry Company paid to the plaintiff the sum of $535,000 in liquidation of advances previously made by the plaintiff to that company. The balance of $15,000 was used by the Modern Foundry Company to pay certain of its other debts.

9. On December 31, 1927, the Modern Foundry Company had no assets and no liabilities, and on that date its common and preferred stock became worthless.

10. The plaintiff received nothing on its investment in the stock of the Modern Foundry Company, but on the contrary suffered a loss of $324,538.86, the cost of the stock. This loss was suffered in 1927, when the stock became worthless. The Commissioner of Internal Revenue reduced this loss by $290,964.83, which amount plaintiff had availed itself of as losses of the subsidiary, Modern Foundry Company, for prior years.

11. On March 15, 1928, the plaintiff filed its tentative corporation income tax return for the year 1927, and on or about May 15, 1928, the completed return was filed, both with the Collector of Internal Revenue at Cincinnati, Ohio. The completed return disclosed a net income of $470,877.73, and a tax liability of $63,568.-49. A subsequent examination of the books and records of the plaintiff resulted in the assessment of deficiency in tax and interest by the Commissioner of Internal Revenue of $6,943.25, making a total of tax and interest for the year 1927 of $70,-512.51, which the plaintiff duly paid in the following manner:

```
March 15, 1928.....................  $15,815.25
June 13, 1928.......................   15,969.76
Sept. 13, 1928......................   15,892.13
Dec. 13, 1928.......................   15,892.12
Aug. 28, 1930.......................    6,943.25
                                      ──────────
                                      $70,512.51
```

12. On August 7, 1930, the plaintiff filed a properly executed claim for refund of $43,812.76 with the Collector of Internal Revenue at Cincinnati, Ohio, giving as the grounds therefor that plaintiff had sustained a deductible loss during the year 1927 resulting from the liquidation of its wholly owned subsidiary, the Modern Foundry Company.

13. On February 12, 1934, the plaintiff was advised by the Commissioner of Internal Revenue that its claim for refund had been allowed in the amount of $4,532.-49, with interest of $647.95, totaling $5,-180.44, and had been disallowed for $38,-632.32.

14. In the conduct of its business for the years 1921 and 1922 the Modern Foundry Company suffered losses of $125,-356.22 and $53,484.47, respectively. For the taxable years 1922 and 1923 the plaintiff reduced its net income by the net losses which the Modern Foundry Company had sustained for the years 1921 and 1922, respectively, which reduction of net income was erroneous. However, the reduction was with the knowledge of the Commissioner of Internal Revenue, consistent with

the procedure followed at that time, and was then considered by the plaintiff and the Commissioner of Internal Revenue to be legally correct. By reason of this erroneous reduction in net income the plaintiff's net taxable income for the years 1922 and 1923 was understated to the extent of $178,840.69, an income tax upon which would have been at that time collectible by the defendant at 12½ per centum, or $22,355.08, had the defendant asserted and prosecuted a deficiency assessment in that amount against the plaintiff.

A. K. Shipe, of Washington, D. C. (Esch, Kerr, Taylor & Shipe, of Washington, D. C., on the brief), for plaintiff.

J. W. Blalock, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff seeks recovery of the sum of $24,114.66, with interest, an alleged overpayment of federal income taxes for the year 1927.

For the years 1918 to 1927, inclusive, the plaintiff filed consolidated income tax returns for itself and the Modern Foundry Company. Plaintiff, in April, 1917, had acquired all the common capital stock of the Modern Foundry Company for which it paid $167,738.86 in cash, and on December 27, 1922, had acquired all the preferred stock of the said company for which it paid $156,800 in cash.

In December, 1927, the plaintiff paid the sum of $550,000 to the Modern Foundry Company for its entire property and assets, which property and assets were thereupon transferred to plaintiff. Upon receipt of the $550,000, the Modern Foundry Company paid plaintiff the sum of $535,000 in liquidation of advances previously made by plaintiff to that company; the balance, $15,000, was used by the Modern Foundry Company in the payment of certain other debts. Thereupon the Modern Foundry Company had neither assets nor liabilities, and its entire stock, both common and preferred, became worthless. The plaintiff upon the liquidation of the Modern Foundry Company received nothing on its investment of $324,538.86 in the stock of that company.

The plaintiff filed its completed corporation income tax return for the year 1927 on May 15, 1928, which return disclosed a net income of $470,877.73, and a tax liability of $63,568.49, which was duly paid. Subsequently the Commissioner made an additional assessment for the year of $6,943.25, which amount was also paid. Plaintiff in the return made no claim for a deduction from income because of the loss resulting from the liquidation in 1927 of its wholly owned subsidiary, but subsequently on August 7, 1930, filed its claim for refund of $43,812.76 on the ground that it had sustained a loss of $324,538.86 on the liquidation of the stock of that company. The Commissioner of Internal Revenue upon consideration of the claim for refund, among other adjustments, reduced plaintiff's loss of $324,538.86 to a deductible loss of $33,574.03 and refused to allow as a deduction the balance of the stock loss in the sum of $290,964.83 on the ground that the plaintiff had availed itself of this sum in the consolidated returns as an offset to its income during certain prior years, which losses could not have been availed of by the Modern Foundry Company as net losses or otherwise had its income been reported in separate returns instead of being reported in a consolidated return.

The plaintiff in this proceeding challenges the propriety of the Commissioner's action in reducing the amount of its loss on account of the liquidation of the stock of the Modern Foundry Company to the extent of $178,840.69, which sum represents the net losses of that company for the years 1921 and 1922. These losses were used by plaintiff in the consolidated re-

turns to reduce its taxable income for the years 1922 and 1923. The deductions were acquiesced in by the Commissioner and were consistent with the procedure then followed by the Bureau of Internal Revenue. The deductions, however, under the authority of Woolford Realty Co., Inc., v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128, are conceded to have been unlawfully made, although at the time they were taken both the plaintiff and the Commissioner of Internal Revenue deemed them to be legally correct. By reason of these erroneous deductions the plaintiff's net taxable income for the years 1922 and 1923 was understated to the extent of $178,840.-69, the income tax upon which at the time would have been $22,355.08.

The plaintiff contends that the reduction of its otherwise deductible loss for the year 1927 to the extent of $187,627.18, because losses of the Modern Foundry Company in a like amount during the years 1921 and 1922 were unlawfully deducted from plaintiff's income for 1922 and 1923, would in effect extend the period of limitation for the assessment of deficiency taxes due from the plaintiff for those years far beyond that provided by law, thus enabling the Commissioner to collect from the plaintiff deficiency taxes never assessed against it and clearly barred by the statute. It is contended that because the deductions from plaintiff's income for the years 1922 and 1923 of losses of the foundry company in the amount of $187,627.18 were illegally taken, the plaintiff, in contemplation of law, did not avail itself of such losses, and that the Commissioner was without authority to reduce plaintiff's 1927 loss on the stock of the foundry company by deducting the amount of the net losses of that company for the years 1921 and 1922, which plaintiff had unlawfully availed itself of in arriving at the consolidated net income for the years 1922 and 1923.

Section 202 of the Revenue Act of 1926 (44 Stat. 11) provides, in part, as follows:

"Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

"(b) In computing the amount of gain or loss under subdivision (a)—

"(1) Proper adjustment shall be made for any expenditure or item of loss properly chargeable to capital account, and."

■ It is well established that double deductions like double taxation should never be presumed and should always be avoided unless clearly provided by the statute. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897; United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054.

■ Upon the basis of these decisions, the General Counsel of the Bureau of Internal Revenue (G.C.M., 7765, Cumulative Bulletin IX–I, p. 223) placed the following construction on section 202 (b) (1) of the Revenue Act of 1926: " * * * that an adjustment to the gain or loss basis of a subsidiary corporation's stock in the hands of the parent corporation is necessary where the losses of the subsidiary are reported in a consolidated return and used as an offset against the income of the parent corporation and it appears that the losses could not have been availed of by the subsidiary as net losses or otherwise had its income been reported in separate returns instead of being reported in a consolidated return."

This ruling was followed by the Commissioner of Internal Revenue in reducing the loss sustained by plaintiff on the liquidation of the stock of the Modern Foundry Company to the extent of the net losses of that company which had been taken by plaintiff in previous years in its consolidated tax returns.

In McLaughlin, Collector, v. Pacific Lumber Co., 293 U.S. 351, 55 S.Ct. 219, 220, 79 L.Ed. 423, the taxpayer sought a reduction in income for the year 1923 on account of losses resulting from the liquidation within the year of a wholly owned subsidiary, A. F. Thane & Co. From 1920 to 1923, inclusive, the taxpayer and Thane & Co. had made separate income tax returns and also consolidated returns as affiliated corporations. Their income taxes were assessed and paid on the latter basis. The taxpayer in each of the years had a large net income and Thane & Co. lost heavily. The net losses of Thane & Co. during each of the years were deducted from the income of the taxpayer in arriving at the consolidated net income and during the years involved the deductions so made were in excess of the taxpayer's

loss resulting from the liquidation of Thane & Co. In deciding the question presented the court said: "If not inconsistent with its obligation under the statute accurately to report taxable income for 1923, respondent may deduct the losses it sustained in that year as the result of its investment in the stock of Thane & Company and its advances to or for that company. Burnet v. Aluminum Goods Co., 287 U.S. 544, 550, 53 S.Ct. 227, 77 L.Ed. 484. But a consolidated return must truly reflect taxable income of the unitary business and consequently it may not be employed to enable the taxpayer to use more than once the same losses for reduction of income. Losses of Thane & Co. that were subtracted from respondent's income are not directly or indirectly again deductible. Handy & Harman v. Burnet, 284 U.S. 136, 140, 52 S.Ct. 51, 76 L.Ed. 207; United States v. Ludey, 274 U.S. 295, 301, 47 S.Ct. 608, 71 L.Ed. 1054; Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127."

In Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 597, 78 L.Ed. 1127, the court said:

"The question is whether petitioner is entitled to deduct from its 1929 income any part of the losses resulting from its investments in the subsidiaries. * * *

"The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers."

The plaintiff in the brief concedes that the facts in the McLaughlin Case are quite similar to those presented here, but says that the question of unlawful deductions of losses of an affiliated corporation from the income of the parent corporation, in arriving at consolidated net income, was not there involved, and hence the decision is not authority in support of the Commissioner's action in the instant case. This contention, we think, is without merit. There is no contention that the plaintiff did not receive the full benefit of the deductions from its income of the losses of the Modern Foundry Company for the years prior to 1927. It is simply contended that these benefits were unlawfully received. The plaintiff asked for the deductions and through a mistaken interpretation of the law they were allowed. It has had the benefit of them in the reduction of its taxes for the years involved. To now allow the plaintiff a reduction in income for the year 1927 of the full amount of the loss sustained by it during the year on the liquidation of the Modern Foundry Company would, to the extent of the $187,840.69 disallowed by the Commissioner, amount to a double deduction of the same losses. This the law does not permit, and it is entirely immaterial whether the deductions taken in 1922 and 1923 were legal or illegal when taken. The material question is whether they were in fact taken. If so the same losses may not again be deducted.

The plaintiff is not entitled to recover, and the petition is dismissed. It is so ordered.