## COMMISSIONER OF INTERNAL REVENUE v. GEORGE M. JONES CO.

### No. 10012.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1945.

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Helen Goodner, all of Washington, D. C., on the brief), for petitioner.

John J. Kendrick, of Toledo, Ohio, for respondent.

Before HICKS and MARTIN, Circuit Judges, and FORD, District Judge.

MARTIN, Circuit Judge.

Although rulings upon several separate transactions were made by the Tax Court in a redetermination of deficiencies in the income tax of the respondent for the year 1934, only one issue is presented by this .

petition for review. That issue is whether, in determining the gain of the respondent corporation from its redemption in 1934 of the preferred stock of a wholly owned subsidiary corporation, the original basis of the taxpayer for the stock should be adjusted, under Section 113(b) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts page 700, and Article 113(b)-1 of Treasury Regulations 86, by reducing such basis by the amount of the subsidiary's net losses which had offset the taxpayer's net income in consolidated returns covering both corporations filed in years prior to 1934. The Tax Court, upholding the taxpayer's basis in its return and reversing the determination of the Commissioner of Internal Revenue, held that the basis of respondent taxpayer should not be so reduced.

The Tax Court found, as matters of fact, that on January 1, 1934, respondent, which then owned all the common stock of its subsidiary, The Ohio Collieries Company and still owned it at the end of the taxable year 1934, owned also all the preferred stock of the subsidiary company, that is, 10,000 shares of par value $100 each. The common stock had been acquired by respondent on February 16, 1917, at a cost of $10,449; and half of the preferred shares had been acquired on March 8, 1917, at a cash cost of $500,000, and the other half had been received as a stock dividend in 1922. The seven percent cumulative preferred stock was callable at $110 a share.

At the beginning of the taxable year 1934, the respondent was indebted to its subsidiary on open account in the sum of $2,911,905.33. On October 1, 1934, all the preferred shares of the Ohio Collieries Company were called for redemption, respondent surrendered the shares, and received a credit of $1,100,000 upon its open account.

As parent corporation, the respondent had filed consolidated income tax returns for the years 1924, 1925, and 1927 to 1933, inclusive, and had reported in each of those returns consolidated losses, with the result that respondent paid no income tax for any of those years.

In its return for 1934, the respondent reported as income the sum of $600,000, constituting the difference between its stated cost of $500,000 for the preferred shares and $1,100,000 credited upon the subsidiary's books as the redemption value of the preferred shares.

The Commissioner increased to $1,100,000 the profit of the respondent on the transaction. This was an increase of $500,000 over respondent's return. The redetermination of the profit in the preferred stock redemption resulted from the adjustment by the Commissioner of the basis to the extent of $985,877.14, that being the total amount of the losses of the subsidiary of which respondent had availed itself on the consolidated returns filed in the prior years. This aggregate deduction in income during the prior years more than offset the $500,000 cost to respondent in the purchase of the preferred stock of the subsidiary. But the Tax Court found that, in 1934, the correct basis to respondent of the 10,000 shares of the preferred stock of its subsidiary was $500,000.

The respondent sought to establish a total base of more than $4,000,000 in consequence of the alleged transfer of assets to its subsidiary, The Ohio Collieries Company. The Tax Court, however, was plainly right in rejecting that insistence which found no substantial support in the evidence.

█ It becomes our function on this review to determine whether the decision of the Tax Court has " 'warrant in the record' and a reasonable basis in the law." If we cannot separate the elements of the decision "so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand." Dobson v. Commissioner, 320 U.S. 489, 501, 502, 64 S.Ct. 239, 247, 88 L.Ed. 248.

In an opinion not contained in its published reports but set forth in the record, the Tax Court took cognizance of the contention of the Commissioner that his action in adjusting the cash cost of the preferred shares, by application of losses of its subsidiary availed of by the respondent on consolidated returns filed in prior years, is supported by Article 113(b)-1 of Treasury Regulations 86.[1]

The argument of the Commissioner was rejected by the Tax Court upon the ground

---

[1] "Adjustments must always be made to eliminate double deductions or their equivalent. Thus, in the case of the stock of a subsidiary company, the basis thereof must be properly adjusted for the amount of the subsidiary company's losses for the year in which consolidated returns were made."

that Article 113(b)-1 applies only *where a taxpayer is claiming a loss* and has had the benefit of deductions relative to its affiliate during the consolidated period, and that the double deduction rule is, therefore, not pertinent.

The Tax Court pointed to its previous decision in Jordahl & Company v. Commissioner, 35 B.T.A. 1136, which, it was declared, had been reviewed by the Board of Tax Appeals and acquiesced in by the Commissioner. 1938, Vol. 1, C.B. p. 17. Quoting from its opinion in the Jordahl case and declaring that Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, and other like cases deal only with loss deductions, the court said: "There is no implication that the rule therein stated is to govern in the computation of a taxable gain to the parent corporation. The necessity for the rule restricting the loss deductions, as the court pointed out, is to prevent a parent corporation from twice deducting the losses of a subsidiary corporation. * * * In Remington Rand, Inc. v. Commissioner, 2 Cir., 33 F.2d 77, cited in Ilfeld Co. v. Hernandez, supra, the court held that a subsidiary company's accumulated earnings could not be added to the cost of the stock in determining the parent company's taxable gain on its sale to outside interests. As a corollary the subsidiary's losses should not be subtracted from the cost of the stock in determining the parent company's gain. * * * The basis in the hands of a parent corporation of the shares of a subsidiary is not affected by the operating losses of the subsidiary and must be determined as provided in the statute. * * *"

The Tax Court met the argument of the Commissioner, that the Jordahl case is not in point inasmuch as there the year involved was 1927 while *here* the consolidated return embraced the years 1929 to 1933, inclusive. Manchester Savings Bank and Trust Co. v. Commissioner, 34 B.T.A. 1008, relied upon by the Commissioner, was distinguished, in that there the liquidation was complete, the affiliation with its subsidiary was destroyed, and the decision was based on Article 34(c), Regulations 78, while here the redemption of the preferred stock of the subsidiary owned by the parent company did not terminate the affiliation and was made subsequent to 1933, the last year in which consolidated returns were permitted to be filed.

It was pointed out that, the preferred stock having been held by the parent corporation during the period from 1929 to 1933, inclusive, Article 34 of the pertinent Treasury Regulations, relating to the adjustment of the cost basis for gain or loss with respect to the stock of a subsidiary redeemed in whole or in part, provides that if the redemption or sale of the stock does not break the affiliation the basis shall be adjusted "in the same manner as if the selling corporation and the issuing corporation had never been members of an affiliated group." And so it was declared that any losses deducted must be disregarded in the adjustment. It was thought that, if the transaction in question had occurred in any of the years from 1928 to 1933, no doubt could exist that the regulations would have precluded any such adjustment as was made by the Commissioner in determining the deficiency. The Jordahl case was cited to that proposition.

Upon insistence of the Commissioner, the Tax Court took into consideration the fact that the transaction in controversy occurred in 1934, after the privilege of filing consolidated returns had been withdrawn by the limitation contained in Section 141(d) (3) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 716. Article 113(a) (11)-1, of Regulations 86, issued by the Commissioner in pursuance of that Act, was quoted; and it was pointed out that, in the next succeeding section of the Regulations, Article 113(b)-1, under the heading "Adjusted Basis: General Rule," the requirement was stated: "Adjustments must always be made to eliminate double deductions or their equivalent." The Commissioner had urged that the word "equivalent," as used in the Regulation, should be construed as a direction that, in computing a *gain,* the original cost of property must be adjusted by the deduction of losses of an affiliate taken advantage of in prior years under consolidated returns.

The validity of this argument was denied in the following language of the Tax Court: "A careful reading of the Regulation leaves us convinced that such construction of the language of Article 113 (b)-1 is not justified. Had such meaning been intended it would have been a simple matter to express it clearly. Such construction is, we think, strained and unreal and in direct conflict with the specific di-

rection of the preceding section which provides that the basis shall be adjusted as under the Regulations for 1933 and this figure taken for 1934. The figure for 1933 would certainly not reflect the losses taken advantage of. The Jordahl case is squarely in point on that."

In concluding its opinion, the tax tribunal swept aside the Commissioner's dependence upon G. C. M. 7765, C. B. IX-1, p. 223, G. C. M. 11676, C. B. XII-1, p. 75, and G. C. M. 12581, C. B. XIII-1, p. 142. It was asserted that, in all these directions, the rule was recognized as applicable to a situation "where the subsidiary is either liquidated or its stock sold by the parent to some outsider."

After careful consideration, we find that the holdings in the following listed cases and in others cited by the Commissioner pertaining to "double deduction" do not indicate that the decision of the Tax Court was "not in accordance with law," or that, separating the elements of its decision, a clear-cut mistake of law is identifiable: Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127; McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 355, 55 S.Ct. 219, 79 L.Ed. 423; United States v. Lakewood Engineering Co., 6 Cir., 70 F.2d 887, 888, 889; Greif Cooperage Corporation v. Commissioner of Internal Revenue, 3 Cir., 85 F.2d 365, 366; Commissioner of Internal Revenue v. National Casket Co., 3 Cir., 78 F.2d 940. The per curiam opinion of this court in Weil v. Commissioner of Internal Revenue, 6 Cir., 92 F.2d 1022, affirming the decision of the Board of Tax Appeals, has no bearing upon the present controversy.

In our judgment, the decision of the Tax Court undoubtedly has warrant in the record and a reasonable basis in the law. Having so concluded, our judicial function is exhausted. Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248.

We do not find in the later decisions of the Supreme Court that the binding authority of the Dobson case has been weakened. Indeed, the expressions in Com'r v. Scottish American Co., 323 U.S. 119, 124, 125, 65 S.Ct. 169, would seem to expand the original rationalization in the Dobson case. The opinion in McDonald v. Commissioner, 323 U.S. 57, 64, 65, 65 S.Ct. 96, 155 A.L.R. 119, also adhered to its underlying rationale. In Trust u/w of Bingham v. Com'r of Internal Revenue, 325 U.S. 365, 65 S.Ct. 1232, the Supreme Court merely made it plain that the Dobson case did not nullify the intent of the Federal Statute, Int.Rev.Code, Sec. 1141(c) (1), 26 U.S.C.A. Int.Rev.Code § 1141(c) (1), to subject to appellate review any decision of the Tax Court for determination of whether or not it is "in accordance with law." It should be observed, moreover, that no error of law was found in the judgment of the tax tribunal and the Court of Appeals was reversed for reversing the decision of the Tax Court.

Boehm v. Commissioner of Internal Revenue, 1945, 66 S.Ct. 120, 124, reiterated that the Tax Court is a basic fact-finding and inference-making body and is entitled to draw whatever inferences and conclusions it deems reasonable from the facts found by it. The unanimous opinion in that most recent case declares that an appellate court is limited to a consideration of whether the decision of the Tax Court under review is "in accordance with law"; and, if so, "it is immaterial that different inferences and conclusions might fairly be drawn from the undisputed facts."

The decision of the Tax Court is affirmed.